IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

UNITED STATES OF AMERICA ex rel.
KATHLEEN S. EMBREE,

        Plaintiff,

    v.                                            CIVIL NO. 1:20CV43
                                                  (KLEEH)

SANJAY BHARTI, M.D.; SANJAY BHARTI,
M.D., PLLC, doing business as MEDBRIDGE,
doing business as TRANSITION HEALTH CARE;
FEYISITAN ADEBAJO, M.D.; CIMENGA TSHIBAKA,
M.D.; ALEXANDER YAZHBIN, M.D.; HIGHLANDS
HOSPITAL; and DOES 1-100,

        Defendants.

## OMNIBUS MEMORANDUM OPINION AND ORDER

Pending before the Court are the motions to dismiss of Defendant Cimenga Tshibaka [ECF No. 55]; Defendant Alexander Yazhbin [ECF No. 57]; Defendants Sanjay Bharti and Sanjay Bharti, M.D., PLLC[1] [ECF No. 59]; Defendants Highlands Hospital, Penn Highlands Healthcare, and Highlands Hospital d/b/a Penn Highlands Connellsville[2] [ECF No. 65]; and Defendant Feyisitan Adebajo [ECF No. 91]. The motions are fully briefed and ripe for review.

For the reasons discussed herein, the Court **DENIES** the motion to dismiss of Defendant Tshibaka [ECF No. 55] but **GRANTS** the

---

[1] Sanjay Bharti and Sanjay Bharti, M.D., PLLC are referred to collectively herein as the "Bharti Defendants."
[2] Highlands Hospital, PHH, and PHC are referred to collectively herein as the "Hospital Defendants."

OMNIBUS MEMORANDUM OPINION AND ORDER

motions to dismiss of Defendant Yazhbin [ECF No. 57], the Bharti Defendants [ECF No. 59], Defendant Adebajo [ECF No. 91], and the Hospital Defendants [ECF No. 65].

## I.   PROCEDURAL HISTORY

On March 11, 2020, Plaintiff and Relator Kathleen Embree, on behalf of the United States of America, filed a False Claims Act Complaint, pursuant to 31 U.S.C. § 3729, et seq., against Defendants Sanjay Bharti, M.D. ("Dr. Bharti"); Sanjay Bharti, M.D., PLLC ("the Bharti company"); Feyisitan Adebajo, M.D. ("Dr. Adebajo"); Cimenga Tshibaka, M.D. ("Dr. Tshibaka"); Alexander Yazhbin M.D. ("Dr. Yazhbin"); Highlands Hospital; and Does 1 through 100 [ECF No. 1].[3]   On July 2, 2020, the United States, by counsel, filed a sealed motion requesting the Court enter an ex parte Order under 31 U.S.C. § 3730(b)(2) granting the United States an extension of time from June 11, 2020, through December 8, 2020, to "notify the Court of its decision regarding intervention in the above-captioned False Claims Act qui tam action" [ECF No. 5].   The United States also requested the complaint remained filed under seal during this time.   Id.   The Court granted the motion, under seal, as to all the relief sought therein [ECF No. 6].   The United States filed four (4) additional

---

[3] Dr. Bharti, Dr. Adebajo, Dr. Tshibaka, and Dr. Yazhbin are referred to collectively herein as the "Physician Defendants."

OMNIBUS MEMORANDUM OPINION AND ORDER

sealed motions of the same nature, requesting relief and extensions of time pursuant to 31 U.S.C. § 3730(b)(2) [ECF Nos. 7, 9, 11, 13]. The Court granted each motion by orders entered under seal [ECF Nos. 8, 10, 12, 14].

On May 9, 2022, the United States filed its Notice of Election to Decline Intervention and requested the Court unseal the case [ECF No. 15]. The Court granted the request and unsealed the case [ECF No. 17]. Several of the defendants filed responsive motions. Thereafter, on October 24, 2022, Relator filed an Amended Complaint, adding factual allegations regarding the defendants' violations of the qui tam provisions of the False Claims Act and adding Penn Highlands Healthcare ("PHH") and Highlands Hospital d/b/a Penn Highlands Connellsville ("PHC") as defendants in this action [ECF No. 53]. Specifically, Relator alleges violations of 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(C). Id. Defendants now seek to dismiss the Amended Complaint pursuant to Rules 9(b), 12(b)(2), 12(b)(6) of the Federal Rules of Civil Procedure. The Court will address each motion in turn.

## II.   **FACTUAL ALLEGATIONS**[4]

In the Amended Complaint, Relator alleges Defendants conspired to bill for medical services and treatment not performed;

---

[4] The facts are taken from the Amended Complaint and construed in the light most favorable to Relator. See De'Lonta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

OMNIBUS MEMORANDUM OPINION AND ORDER

to bill for medical services and treatment at a higher, more
sophisticated and more time-intensive level than was performed;
and to bill for medical services performed but not necessary and
effective.  Id. at ¶ 1.  As a result, "Defendant[s] defrauded
federally funded health insurance programs, namely Medicare and
Medicaid, out of significant amounts of federal funds from at least
2018." Id.

## A.   Parties

Kathleen Embree ("Relator") is a Pennsylvania resident who
was employed by Highlands Hospital, located in Fayette County,
Pennsylvania, as a Case Manager and Utilization Review RN at all
times relevant to this lawsuit.  Id. at ¶ 5.  In this position,
Relator reviewed medical charts to ensure compliance with
submissions to patients' insurances payors and rounded with
physicians to observe their interactions with and physical
assessments of their patients.  Id.  "In doing so, [Relator]
personally observed the physicians engaging in and discussing the
[alleged] scheme to defraud." Id.

Dr. Bharti is a resident of Morgantown, West Virginia who
worked as a contract hospitalist and emergency medicine
practitioner at Highlands Hospital.  Id. at ¶ 7.  Dr. Bharti is

OMNIBUS MEMORANDUM OPINION AND ORDER

the primary owner of the Bharti company,[5] a West Virginia corporation with its principal place of business in Morgantown, West Virginia.  Id. at ¶ 8.

Dr. Adebajo is a resident of Pennsylvania[6] who was contracted by the Bharti Defendants to work as a hospitalist and emergency medicine practitioner at Highlands Hospital.  Id. at ¶ 9.  Dr. Tshibaka is a resident of Pennsylvania who worked as a contracted general surgeon at Highlands Hospital.  Id. at ¶ 10.  Occasionally, he worked for the Bharti Defendants to cover the services of the other Physician Defendants.  Id.  Dr. Yazhbin is a resident of Pennsylvania who was contracted by the Bharti Defendants to work as a hospitalist and emergency medicine practitioner at Highlands Hospital.  Id. at ¶ 11.

At the relevant time, Highlands Hospital functioned as a Pennsylvania non-profit corporation.  Id. at ¶ 12.  It employed over 400 individuals and operated a 64-bed hospital that provided emergency, medical, surgical, and behavioral health services in Southwest Pennsylvania.  Id.

PHH is a Pennsylvania non-profit parent corporation of a community health system consisting of "seven acute care hospitals,

---

[5] The Bharti company is also known as Medbridge and Transition Health Care.  Id. at ¶ 8.
[6] Based on his submissions to the Court, it appears that Dr. Tshibaka may now be a resident of Arkansas.

OMNIBUS MEMORANDUM OPINION AND ORDER

a home care agency, long term care facilities, a senior living facility, and a network of physician practice, which together provide primary, secondary, and tertiary health care services. . . .” Id. at ¶ 13.  On April 1, 2022, “PHH became the sole corporate member of Highlands Hospital, rendering it a subsidiary of PHH.” Id.  PHC is the corporate entity that operates Highlands Hospital following PHH's acquisition.  Id. at ¶ 14.

**B.    Federally Funded Insurance Programs**

Medicare, the nation's largest health insurance program, “is a federally funded health insurance program for people 65 or older, people under age 65 with certain disabilities, and people of all ages with end-stage renal disease.” Id. at ¶ 25.  Medicare pays healthcare providers for medical goods and services according to government-established conditions and rates.  Id.  It consists of two parts.  Id.  Medicare Part A covers inpatient hospital and other related services.  Id.  Medicare Part B covers other outpatient medical services and expenses.  Id.

After enrolling in the Medicare program, providers are reimbursed by the government predetermined rates for services provided to covered patients.  Id. at ¶¶ 28, 32.  Under Part A, providers receive interim reimbursements by submitting claims for medical care provided during a patient's hospital stay.  Id. at ¶¶ 33-34.  Providers then submit annual hospital cost reports

OMNIBUS MEMORANDUM OPINION AND ORDER

summarizing all care provided to determine if they have been underpaid or overpaid over the course of the fiscal year. Id. at ¶¶ 34-37.  Under Part B, providers submit claims for services rendered and Medicare reimburses them 80% of the reasonable charge for medically necessary items and services. Id. at ¶¶ 44-45.

To participate in the Medicare program, medical providers must abide by certain conditions. Id. at ¶ 30.  For example, providers agree to bill the government only for services that meet professionally recognized standards of care and are medically necessary may be billed to the government. Id. at ¶¶ 23-31. Providers also must certify that hospital cost reports are truthful, accurate, complete and that they have complied with all applicable laws and regulations. Id. at ¶¶ 38-41, 48.

Medicaid functions similarly.  It is a joint federal and state health insurance program that pays medical expenses for low-income and disabled patients. Id. at ¶¶ 49-50.  Enrolled providers submit claims for reimbursement to the State after rendering services to Medicaid beneficiaries. Id. at ¶¶ 49-50, 53-55.  The State pays providers according to government-established rates. Id. at ¶ 55. The federal government then pay the State a percentage of the total funds expended. Id. at ¶¶ 51, 55.

Centers for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health & Human Services

OMNIBUS MEMORANDUM OPINION AND ORDER

("HHS"), administers and supervises the Medicare and Medicaid Programs.  Id. at ¶ 6.  CMS establishes standard rates for each medical service.  Id.  Medicare and Medicaid providers bill for these services using standard descriptions and Common Procedural Terminology ("CPT") codes.  Id. at ¶¶ 25, 63.

**C.   Allegations under the Federal False Claims Act ("FCA")**

Here, Relator alleges that Defendants defrauded the Medicare and Medicaid programs by knowingly submitting false claims to receive reimbursement beyond that to which they were entitled.  In July 2018, Highland Hospital contracted the Bharti Defendants to provide physician emergency room and hospitalist care.  Id. at ¶ 61.  Dr. Bharti, in turn, hired Drs. Adebajo and Yazhbin to provide these services.  Id.  Dr. Tshibaka occasionally worked for Dr. Bharti to cover the other Physician Defendants' services.  Id.

All defendants accepted Medicare and Medicaid insurance for services rendered to their patients.  Id. at ¶¶ 62-63.  The Physician Defendants billed Medicare and Medicaid for patient care by submitting individual claims with the standardized CPT codes for the services rendered.  Id. at ¶ 63.  The Bharti corporation processed all the Physician Defendants' reimbursement claims.  Id.  The Hospital Defendants, however, received flat rate reimbursements for patient care.  Id. at ¶ 62.

OMNIBUS MEMORANDUM OPINION AND ORDER

To receive more reimbursement funds than they were owed, the Physician Defendants knowingly submitted four types of false claims and statements to Medicare and Medicaid.  First, the Physician Defendants inaccurately reported that their physician assistants were working as scribes.  Id. at ¶¶ 93-96.[7]  The Physician Defendants employed several physician assistants who saw Highland Hospital patients unsupervised.  Id. at ¶¶ 92-94.  The physician assistants "conduct[ed] patient encounters without the physician providing the care, but nevertheless note[d] patient charts and billing documentation [as if] they were acting as a scribe with the physician present and personally providing the care, when in fact the Physician Assistant conducted the patient encounter from start to finish."  Id. at ¶ 92.  Thus, the Physician Defendants billed 100% of the reimbursement rate rather than the 85% to which they were entitled.

Second, the Physician Defendants billed for services and procedures not performed.  Id. at ¶¶ 97-98.  Relator recounts several instances in which patients' charts indicated they had

---

[7] In Pennsylvania, physicians may employ paraprofessionals, such as physician assistants or nurse practitioners, to diagnose and treat patients unsupervised. Id. at ¶ 89.  Physicians can bill Medicare and Medicaid for paraprofessional services, but they are reimbursed only 85% of the standard physician rate.  Id. Physicians may also use scribes who perform ministerial functions, i.e., taking progress notes and updating medical charts, while the physician assesses the patient.  Id. at ¶ 90.  A scribe's services may be billed to Medicare and Medicaid at the full physician rate.  Id.  Where a physician is present, a paraprofessional can act as a scribe and be reimbursed the full rate.  Id. at ¶ 91.

USA V. BHARTI ET AL.                                                    1:20CV43

<u>OMNIBUS MEMORANDUM OPINION AND ORDER</u>

been evaluated and treated by the Physician Defendants although the physicians (1) were not physically present at the hospital when the services were allegedly rendered, (2) were not with the patient long enough to perform the alleged treatment, or (3) did not see the patient at all.  <u>Id.</u>

Third, the Physician Defendants billed for more expensive or extensive medical services than performed.  Relator includes several instances of the physicians exaggerating the amount of time spent with patients and services rendered during these encounters.  <u>Id.</u> at ¶ 99.  In doing so, the Physician Defendants billed for services they never performed.  <u>Id.</u> at ¶¶ 99-100.

Finally, the Physician Defendants billed for treatment and services that were not medically necessary.  <u>Id.</u> at ¶¶ 78, 101-03.  The Physician Defendants "upcoded" their billing or submitted "claims alleging patients were more ill than they actually were and therefore needed more extensive treatments than was reasonable and necessary, and claim[ed] they provided more extensive care than the doctors actually did." <u>Id.</u> at ¶ 65.  Physician Defendants "intentionally diagnosed patients with more serious conditions than those with which they initially presented" so they could "bill for diagnoses requiring more intensive care and treatment, which corresponded to CPT codes that provided higher reimbursement for physician services." <u>Id.</u> at ¶ 72.  For example, Dr. Bharti

10

OMNIBUS MEMORANDUM OPINION AND ORDER

encouraged the Physician Defendants to diagnose with sepsis any patient presenting with a slight infection, fever, or mild dehydration because the associated treatment had higher paying billing codes. Id. at ¶¶ 73-74.

The Hospital Defendants, through its administrators, officers, nurse managers, physicians, utilization review staff, and quality and risk management staff, were aware of this conduct but did not intervene. Relator attended monthly case management meetings with the Highland Hospital administrators at which the Physician Defendants' "patient care and treatment practices were regularly discussed." Id. at ¶ 68. One administrator stated that he had repeatedly informed the hospital's board about these concerns. Id. at ¶ 69. Ultimately, hospital administrators directed employees to stop questioning the Physician Defendants' practices. Id. at ¶ 70. According to Relator, Highlands Hospital permitted the "upcoding" to continue because it allowed it to raise the level of care it reported to Medicare and Medicaid and so increased the amount it was reimbursed. Id. at ¶ 71.

Based on these facts, Relator asserts Defendants violated FCA in three ways: by presenting false claims for payment to the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(A) (Count One); by making false statement to the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(B) (Count Two); and by

### OMNIBUS MEMORANDUM OPINION AND ORDER

conspiring to commit the foregoing violations against the United States Government, in violation of 31 U.S.C. § 3729(a)(1)(C) (Count Three).  Id. at ¶¶ 21, 110-23.

## III.  <u>LEGAL STANDARDS</u>

### A.    Federal Rule of Civil Procedure 12(b)(2)

When a defendant files a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the ultimate burden of showing that jurisdiction exists by a preponderance of the evidence.  <u>New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.</u>, 416 F.3d 290, 294 (4th Cir. 2005).  However, where a court makes a Rule 12(b)(2) determination without a hearing and based only on the written record, as the Court does here, the plaintiff need only put forth a <u>prima facie</u> showing of jurisdiction "by pointing to affidavits or other relevant evidence."  <u>Henderson v. Metlife Bank, N.A.</u>, 2011 WL 1897427, at *6 (N.D.W. Va. May 18, 2011); <u>see also</u> <u>New Wellington Fin. Corp.</u>, 416 F.3d at 294.  The Court must then "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  <u>New Wellington Fin. Corp.</u>, 416 F.3d at 294; <u>see also</u> 5B Wright & Miller, Federal Practice and Procedure § 1351 (3rd ed.).

OMNIBUS MEMORANDUM OPINION AND ORDER

**B.    Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the grounds that a complaint does not "state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the Complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A motion to dismiss under Rule 12(6)(b) tests the "legal sufficiency of a Complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).  A court should dismiss a Complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 545.  The facts must constitute more than "a formulaic recitation of the elements of a cause of action." Id. at 555.  A motion to dismiss "does not

OMNIBUS MEMORANDUM OPINION AND ORDER

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 942, 952 (4th Cir. 1992).

**C.   Federal Rule of Civil Procedure 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure includes a heightened pleading standard for fraud claims.  "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 784 (4th Cir. 1999) (internal citation and quotation marks omitted).  "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." <u>Id.</u> "Malice, intent, knowledge, and other conditions" may be alleged generally.  Fed. R. Civ. P. 9(b).

OMNIBUS MEMORANDUM OPINION AND ORDER

## IV.   <u>DISCUSSION</u>

Defendants seek to dismiss the Amended Complaint pursuant to Rules 9(b), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

**A.   Defendant Cimenga Tshibaka's Motion to Dismiss [ECF No. 56]**

Dr. Tshibaka moves to dismiss Relator's Amended Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction because he has no contacts with the forum state, West Virginia [ECF No. 56].  He underscores that, at all times relevant to the allegations in this case, he resided in and exclusively practiced medicine in Pennsylvania.  <u>Id.</u> at 2-3.  He is not licensed in West Virginia and has never provided medical services here.  <u>Id.</u>  Dr. Tshibaka further contends that this Court's exercise of personal jurisdiction over him would violate the due process clause of the Fourteenth Amendment.  <u>Id.</u> at 5-6.

Relator opposes Dr. Tshibaka's motion asserting that, he has sufficient minimum contacts with West Virginia because the alleged injury was caused by his business relationship with a West Virginia company [ECF No. 62 at 5-6].  She further argues that Dr. Tshibaka has sufficient minimum contacts with the United States and that this Court has personal jurisdiction over him pursuant to the "national contacts test."  <u>Id.</u>

USA V. BHARTI ET AL.                                          1:20CV43

OMNIBUS MEMORANDUM OPINION AND ORDER

    **1.    The Court has personal jurisdiction over Dr. Tasibaka under the national contacts test.**

For a court to exercise personal jurisdiction over a defendant, there must be "a constitutionally sufficient relationship between the defendant and the forum." ESAB Group v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997) (citing Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)).[8] The defendant typically must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l. Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." Hogue v. Milodon Eng'g., Inc., 736 F.2d 989, 991 (4th Cir. 1984); accord. ESAB Group, 126 F.3d at 626.

To comport with due process, courts have determined that "[w]here ... there is a federal statute that permits worldwide

---

[8] The Court must also have subject matter jurisdiction, venue, and authorization for service of a summons upon the person. ESAB Group, 126 F.3d at 622 (citing Omni Capital Int'l, 484 U.S. at 104). None of these requirements are disputed in this case.

USA V. BHARTI ET AL.                                        1:20CV43

OMNIBUS MEMORANDUM OPINION AND ORDER

service of process, the relevant inquiry is whether the defendants
have minimum contacts with the United States as a whole," not the
traditional inquiry of whether the defendants have minimum
contacts with the forum state.[9]   United States ex rel.
Thistlethwaite v. Dowty Woodville Polymer, 976 F. Supp. 207, 210
(S.D.N.Y.1997); accord. Autoscribe Corp. v. Goldman & Steinberg,
47 F.3d 1164, at *3 (4th Cir. 1995), United States v. Gwinn, No.
2008 WL 867927, at *16 (S.D.W. Va. Mar. 31, 2008).   "This is
commonly referred to as the 'national contacts' test."   Gwinn,
2008 WL 867927, at *16.   In this case the FCA authorizes nationwide
and worldwide service of process.   See 31 U.S.C. § 3732(a).   Thus,
"so long as the assertion of jurisdiction over the defendant is
compatible with due process, the service of process is sufficient
to establish the jurisdiction of the federal court over the person
of the defendant."   Hogue, 736 F.2d at 991.

The Fourth Circuit has not expressly adopted the national
contacts test in a case involving FCA claims.   It has, however,

---

[9] Typically, under Rule 4(k)(1)(A) of the Federal Rules of Civil
Procedure, a federal district court may exercise personal jurisdiction
over a defendant to the same degree that a counterpart state court could
do so.   See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health
Partners, 229 F.3d 448, 450 (4th Cir. 2000).   As a result, for a district
court to have jurisdiction over a nonresident defendant, the exercise
of jurisdiction (1) must be authorized under the state's long-arm
statute, and (2) must comport with the due process requirements of the
Fourteenth Amendment.   Carefirst of Md., Inc. v. Carefirst Pregnancy
Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (citing Christian Sci.
Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215
(4th Cir. 2001)).

OMNIBUS MEMORANDUM OPINION AND ORDER

applied this analysis to claims arising under other statutes that similarly permit nationwide service of process. See e.g., Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 443-44 (4th Cir. 2015) (applying national contacts test to claim under the Employee Retirement Income Security Act); ESAB Group, 126 F.3d at 626 (applying national contacts test to claim under the Racketeer Influenced and Corrupt Organizations Act); Hogue, 736 F.2d at 989 (applying national contacts test to claim under the Bankruptcy Act). Based on this precedent, courts in this District and Circuit have routinely applied the national contacts test to cases involving FCA claims. See e.g., United States ex rel. Fadlalla v. DynCorp Int'l LLC, 402 F. Supp. 3d 162, 177 (D. Md. 2019); United States v. Hobbs, No. 2018 WL 1368325 (N.D.W. Va. Mar. 16, 2018); Skinner v. Armet Armored Vehicles, Inc., 2014 WL 4243670 (W.D. Va. Aug. 26, 2014); Gwinn, 2008 WL 867927.

The Court likewise finds the national contacts test applicable to Relator's FCA claims in this case. Accordingly, its due process analysis will focus on Dr. Tshibaka's contacts with the United States as a whole, rather than on his contacts with West Virginia. See Hobbs, 2018 WL 1368325, at *6; Gwinn, 2008 WL 867927, at *16. Dr. Tshibaka meets the minimum standard for contacts with the United States to establish the Court's personal

18

OMNIBUS MEMORANDUM OPINION AND ORDER

jurisdiction.  He is a citizen and resident of the United States. He is licensed to practice medicine in Pennsylvania, Maryland, and Arkansas and, at all times relevant to the complaint, he lived and worked as a physician in Pennsylvania.

Still, the Court must ensure that the exercise of personal jurisdiction does not offend the Fifth Amendment.  ESAB Group, 126 F.3d at 627.  "The Fifth Amendment's Due Process Clause not only limits the extraterritorial scope of federal sovereign power, but also protects the liberty interests of individuals against unfair burden and inconvenience." Id.  But only in "highly unusual cases" will inconvenience create a constitutional concern.  Id.  "Thus, unless [Dr. Tshibaka] can prove that litigating this case in West Virginia places an unfair burden or inconvenience upon him, personal jurisdiction is compatible with the Due Process Clause of the Fifth Amendment." Gwinn, 2008 WL 867927, at *16.  Dr. Tshibaka has put forth no evidence to demonstrate any inconvenience associated with litigating in this Court, let alone, such "extreme inconvenience or unfairness as would outweigh the congressionally articulated policy of allowing the assertion of in personam jurisdiction." ESAB Group, 126 F.3d at 627.

Because Dr. Tshibaka has sufficient minimum contacts with the United States and there is no extreme inconvenience or unfairness

in requiring him to litigation in this District, the Court **DENIES**
Dr. Tshibaka's motion to dismiss [ECF No. 55].

**B.  Remaining Physician Defendants' Motions to Dismiss [ECF Nos. 57, 59, 91]**

Although the Bharti Defendants, Dr. Adebajo, and Dr. Yazhbin
filed separate motions to dismiss, each raises a common issue which
is dispositive of the claims against them: whether Relator
adequately pleaded presentment of false claims to the United States
Government.[10]  Claims arising under the FCA are fraud-based claims
that must satisfy Rule 9(b)'s heightened pleading standard.  See
United States ex rel. Taylor v. Boyko, 39 F.4th 177, 189 (4th Cir.
2022); United States ex rel. Nathan v. Takeda Pharms. N. Am.,
Inc., 707 F.3d 451, 456 (4th Cir. 2013).  The Court of Appeals of
the Fourth Circuit has "adhered firmly to the strictures of Rule
9(b) in applying its terms to cases brought under the [FCA]."
Nathan, 707 F.3d at 456 (citing United States ex rel. Wilson v.
Kellogg Brown & Root, Inc., 525 F.3d 370, 379-80 (4th Cir. 2008));
see e.g., Taylor, 39 F.4th at 177.  "Rule 9(b)'s particularity
requirement serves as a necessary counterbalance to the gravity

---

[10] Because this issue is dispositive of their claims, the Court does not
address the other pleading deficiencies argued by these defendants.  For
example, the Bharti Defendants assert that Relator fails to make specific
allegations about each individual defendant [ECF No. 60 at 12-14], Dr.
Adebajo asserts that Relator fails to allege any motive for his
participation in the alleged scheme [ECF No. 92 at 18-19], and Dr.
Yazhbin asserts that Relator includes only one factual allegation
directly related to his conduct [ECF No. 58 at 6].

OMNIBUS MEMORANDUM OPINION AND ORDER

and 'quasi-criminal nature' of FCA liability." United States ex rel. Grant v. United Airlines Inc., 912 F.3d 190, 197 (4th Cir. 2018).  "We require that detail to prevent frivolous suits, stop fraud actions where everything is learned after discovery (i.e., fishing expeditions), and to protect defendants' reputations." United States ex rel. Nicholson v. MedCom Carolinas, Inc., 42 F.4th 185, 195 (4th Cir. 2022).

Section 3729(a)(1)(A) of the FCA prohibits any person from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).  Section 3729(a)(1)(B) of the FCA prohibits any person from "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).  To state a claim under subsections A and B, a relator is generally required to allege four elements: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." Taylor, 39 F.4th at 188 (quoting Harrison, 176 F.3d at 788).  Section 729(a)(1)(C) of the FCA prohibits any person from "conspiring to commit a violation of subparagraph (A) [or] (B) . . . ." 31 U.S.C. § 3729(a)(1)(C).  For a conspiracy

OMNIBUS MEMORANDUM OPINION AND ORDER
_____

claim under subsection C, a relator must show that the defendants "agreed that [a] false record or statement would have a material effect on the Government's decision to pay [a] false or fraudulent claim." Nicholson, 42 F.4th at 193 (quoting Allison Engine Co. v. United States ex rel. Sanders, 553 U.S. 662, 673 (2008).

1.   **Relator fails to plausibly plead presentment.**

"In order for a false statement to be actionable under [the False Claims Act], it must be made as part of a false or fraudulent claim." Id. (quoting Grant, 912 F.3d at 196).  The FCA defines a "claim" as "any request or demand ... for money or property ... that ... is presented to an officer, employee, or agent of the United States." 31 U.S.C. § 3729(b)(2)(A)(i) (emphasis added). Thus, presentment of a false claim to the federal government for payment is an essential element of all FCA claims.  "[T]he critical question is whether the defendant caused a false claim to be presented to the government, because liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme." Nathan, 707 F.3d at 456; accord.  Grant, 912 F.3d at 196, Harrison, 176 F.3d at 785-86.

A relator can plead presentment under Rule 9(b) in two ways. First, they can "allege with particularity that specific false claims actually were presented to the government for payment."

OMNIBUS MEMORANDUM OPINION AND ORDER

Nathan, 707 F.3d at 457.  The pleading must "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Wilson, 525 F.3d at 379 (quoting Harrison, 176 F.3d at 784).  Alternatively, a relator can allege a pattern of conduct that would "necessarily have led [] to submission of false claims to the government for payment." Nathan, 707 F.3d at 457 (emphasis in original).  "The gravity of FCA liability reinforces the importance of pleading with particularity that there was a false claim and that the false claim was presented to the government for payment." Grant, 912 F.3d at 200.

As to the first option for pleading presentment, the Bharti Defendants, Dr. Adebajo, and Dr. Yazhbin assert that Relator fails to plead with particularity that specific false claims actually were presented to Medicare or Medicaid for payment.  Relator concedes that the Amended Complaint falls short in this regard, relying instead on the second option for pleading presentment. See e.g., ECF No. 93 at 8 ("[T]he Amended Complaint does not specifically allege all of the aspects of the false claims submitted to Medicare or Medicaid by the Bharti Company.").  The Court accordingly focuses its attention on whether the Amended Complaint plausibly alleges a pattern of conduct necessarily

OMNIBUS MEMORANDUM OPINION AND ORDER

resulting in false claims being submitted for reimbursement.  Upon careful review, the Court concludes it does not.

The Fourth Circuit's analysis in United States ex rel. Taylor v. Boyko, 39 F.4th 177 (4th Cir. 2022), is instructive.  There, the plaintiff brought FCA claims against two doctors, five medical companies, and an accounting firm.  Id. at 183.  She alleged that the defendants "knowingly engaged in a fraudulent upcoding scheme to charge Medicare physician-level rates for mid-level care."  Id. at 188.  She brought claims connected to the medical treatment provided to herself and an unspecified number of other patients.  Id.  The district court found that the plaintiff had adequately pleaded presentment of false claims based on the treatment provided to herself but not for the treatment provided to other patients.  Id. at 195.  The Fourth Circuit affirmed.  Id.

As to her own treatment, the plaintiff alleged that she was seen in an emergency room by a nurse practitioner, but the defendants represented to Medicare that she was seen by a physician, enabling them to receive reimbursement at a higher rate.  Id. at 184-85.  The Plaintiff was charged $668 for her emergency-room visit.  Id. at 185.  Billing at the physician-level rate allowed the defendants to receive Medicare reimbursement in the amount of $132.46 instead of the $112.59 they should have received for the provided mid-level care.  Id. at 186.  Based on these

24

OMNIBUS MEMORANDUM OPINION AND ORDER

allegations, the Fourth Circuit found the plaintiff had adequately pleaded presentment under the FCA.[11]  Id. at 197.

As to patients other than herself, however, the Fourth Circuit found that the plaintiff failed to plausibly plead presentment because her complaint lacked specific allegations as to whether (1) other patients were seen by mid-level providers, (2) providers had signed other charts for patients they had not treated, and (3) the signatures "necessarily prompted [the accounting firm] to submit fraudulent invoices for physician-level care." Id. at 196. While the plaintiff had adequately alleged a fraudulent scheme, she failed to "connect the dots" between the scheme and the eventual government payment. Id. at 196.  It underscored that "an allegation that the company directed doctors to sign something for a fraudulent purpose is not the same thing as an allegation that false claims were actually submitted." Id. (emphasis in original).

Here, Relator's FCA claims suffer from the same defect.  Her complaint details the alleged scheme to defraud federally funded insurance programs.  She adequately describes the methods used by the Physician Defendants to carry out their fraudulent scheme based on her observations of their conduct as a fellow Highlands Hospital employee.   Relator  fails  to  show,  however,  that  any  of  the

---

[11]  The Fourth Circuit ultimately affirmed the district court's dismissal of the plaintiff's personal claim, however, finding that she failed to allege the requisite scienter.  Taylor, 39 F.4th at 197-98.

OMNIBUS MEMORANDUM OPINION AND ORDER

allegedly false claims were necessarily presented to Medicare or Medicaid for reimbursement.  She does not purport to have knowledge of any fraudulent claim actually submitted on behalf of any of the Physician Defendants by the Bharti company.  "[Relator] fails to allege how, or even whether, the bills for these fraudulent services were presented to [Medicare or Medicaid] and how or even whether [Medicare or Medicaid] paid [] for the services." Grant, 912 F.3d at 198.

Merely alleging fraudulent conduct is insufficient.  Thus, like the Plaintiff in Taylor, Relator fails to "connect the dots" between the scheme and the eventual reimbursement by Medicare or Medicaid.  Her complaint "leaves open the possibility that the government was not billed for and accordingly never paid for the particular alleged fraudulent [services]" and "the possibility that any fraudulent [services] were remedied prior to government payment." Grant, 912 F.3d at 198.  These possibilities are fatal to her claim.

Citing precedent from the Court of Appeals for the Fifth Circuit, United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180 (5th Cir. 2009), Relator argues that she has satisfied Rule 9(b)'s heightened standard for presentment by pleading sufficient facts to support a "logical conclusion" that the physicians presented the false and fraudulent bills for reimbursement [ECF No. 67 at

OMNIBUS MEMORANDUM OPINION AND ORDER

14].  According to her, "[i]t would 'stretch the imagination' for physicians to routinely and falsely chart and code without actually submitting the bill to Medicare or Medicaid for that fraudulent reimbursement."  Id. (quoting Grubbs, 656 F.3d at 191-92).  The Fourth Circuit dismissed this same argument in Taylor.  39 F.4th at 196.

Rule 9(b) "does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."  Taylor, 39 F.4th at 196 (emphasis in original) (citing Nathan, 707 F.3d at 461).  Relator's claim that the Physician Defendants must have submitted claims to Medicare and Medicaid for reimbursement because they undertook the effort to falsify patient charts is "inherently speculative" and insufficient under Rule 9(b).  Thus, Relator fails to plausibly plead presentment as required.

Because Relator fails to set out an FCA claim with the requisite particularity, the Court grants the motions to dismiss of the Bharti Defendants, Dr. Adebajo, and Dr. Yazhbin.

## C.  Hospital Defendants' Motion to Dismiss [ECF No. 65]

The Hospital Defendants likewise move to dismiss the Amended Complaint for failure to state a claim because the Physician

OMNIBUS MEMORANDUM OPINION AND ORDER

Defendants submitted their own billing and because Relator fails to plausibly plead presentment [ECF No. 65-1 at 19-23].  They also assert the claims against PHH and PHC should be dismissed because Relator fails to state a claim for successor liability under common law and because they were improperly joined in this action.  Id. at 9-19.

### 1.   The Court will not consider extrinsic evidence.

In an attempt to contradict Relator's allegations in the Amended Complaint, the Hospital Defendants attached five exhibits to their motion to dismiss.  Exhibits A, B, and C are Highland Hospital's income tax documents for fiscal years 2017, 2018, and 2019, respectively [ECF Nos. 65-2, 65-3, 65-4].  The Hospital Defendants offer these exhibits to demonstrate the financial state of Highland Hospital prior to PHH's acquisition of the facility [ECF No. 65-1 at 4].  Exhibit D is a redacted copy of the purchase agreement between PHH and Highlands Hospital [ECF No. 65-5], offered to demonstrate how the Joined Defendants intended to limit their liability during the transaction.  Finally, Exhibit E is a copy of the contract between Highlands Hospital and the Bharti company for services provided by the Physician Defendants [ECF No. 65-6].  The Hospital Defendants offer this exhibit to prove the Physician Defendants exclusively billed Medicare and Medicaid for their services.

USA V. BHARTI ET AL.                                      1:20CV43

OMNIBUS MEMORANDUM OPINION AND ORDER

Before turning to the merits of the Hospital Defendants'
motion, the Court first must address which, if any, of these
exhibits can be considered the motion to dismiss stage. When a
defendant moves to dismiss under Rule 12(b)(6), courts are limited
to considering the sufficiency of allegations set forth in the
complaint and the "documents attached or incorporated into the
complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,
637 F.3d 435, 448 (4th Cir. 2011). "Consideration of extrinsic
documents by a court during the pleading stage of litigation
improperly converts the motion to dismiss into a motion for summary
judgment." Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597,
606 (4th Cir. 2015) (citing E.I. du Pont de Nemours & Co., 637
F.3d at 448). "This conversion is not appropriate when the parties
have not had an opportunity to conduct reasonable discovery." Id.
Courts may consider documents attached to a motion to dismiss
without converting it to a motion for summary judgment only if the
documents are "integral to and explicitly relied on in the
complaint," and "the plaintiffs do not challenge [the documents']
authenticity." Zak, 780 F.3d at 606-07; see also Goines v. Valley
Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

Relator objects to the Court's consideration of any of the
Hospital Defendants' exhibits at the pleading stage [ECF No. 80 at
13-15]. The Hospital Defendants did not address this issue. Upon

OMNIBUS MEMORANDUM OPINION AND ORDER

careful consideration, the Court agrees with Relator.  None of the Hospital Defendants' exhibits are integral to or incorporated by reference in the Amended Complaint.  Relator also challenges their authenticity.  Thus, the Hospital Defendants' exhibits cannot be considered without converting their motion to dismiss into one for summary judgment.  Because the parties have not had an opportunity to conduct reasonable discovery, conversion is inappropriate at this time.  For these reasons, the Court will not consider the extrinsic evidence submitted by the Hospital Defendants and will evaluate the sufficiency of the Amended Complaint based solely on the allegations therein.

### 2. Relator fails to plausibly plead presentment.

As it disposes of the claims against them, the Court begins with the Hospital Defendant's final argument: that Relator fails to state a claim upon which relief may be granted [ECF No. 65 at 19-23].  First, they assert Relator's claims should be dismissed because the Physician Defendants retained exclusive authority to submit billing to Medicare and Medicaid in their contract with Highlands Hospital.  Id. at 19-20.  This argument is not based on the allegations contained in the Amended Complaint, but on contradictory factual allegations drawn from the Hospital Defendant's supporting exhibits.  As explained, the Court will not

USA V. BHARTI ET AL.                                          1:20CV43

OMNIBUS MEMORANDUM OPINION AND ORDER

consider the Hospital Defendants' extrinsic evidence at this early
stage and denies their motion to dismiss on this basis.

The Hospital Defendants next contend that Relator fails to
plausibly plead presentment as required for FCA claims. Id. at
20-23. As explained above, Relator may show presentment with
particularity either by alleging a representative example
describing the time, place, identity of the person making the
misrepresentation and what he obtained thereby or by alleging a
pattern on conduct that would necessarily have led the Hospital
Defendants to submit false claims to Medicare or Medicaid. See
Nicholson, 42 F.4th at 194. Again, Relator fails to adequately
plead presentment through the first avenue. Her complaint is
devoid of any representative example of services that were actually
billed to either Medicare or Medicaid, the date they were billed,
the amount they were billed, and the amount of reimbursement
received by any of the Hospital Defendants.

Relator also fails to allege a pattern of conduct that would
have necessarily led to the presentment of false claims on the
part of the Hospital Defendants. In the Amended Complaint, Relator
alleges she reported her suspicions about the Physician
Defendants' billing practices to Highlands Hospital administrators
and that part of her responsibilities included submitting initial
payor approvals for reimbursement for the hospital to Medicaid.

31

USA V. BHARTI ET AL.                                          1:20CV43

OMNIBUS MEMORANDUM OPINION AND ORDER

But the Amended Complaint contains only conclusory allegations that the allegedly false claims were submitted to Medicare or Medicaid on behalf of Highlands Hospital. It fails to allege any specifics about when or how the claims were submitted. She also fails to address how Highland Hospital's daily rate specifically was impacted by the Physician Defendants alleged billing fraud. Further, the Amended Complaint does not contain any allegations related to what initial reimbursement Highlands Hospital received or whether any alleged overbilling could have been corrected the annual rectification process. Because Relator has not plausibly connected the Hospital Defendants' alleged participation in a fraudulent billing scheme and their eventual reimbursement by Medicare or Medicaid, the Court grants their motion to dismiss pursuant to Rule 12(b)(6).

## V.   CONCLUSION

For the reasons discussed above, the Court:

(1) **DENIES** Defendant Cimenga Tshibaka's motion to dismiss for lack of personal jurisdiction [ECF No. 55];

(2) **GRANTS** the Hospital Defendants' motion to dismiss for failure to state a claim [ECF No. 65];

(3) **GRANTS** Defendant Alexander Yazhbin's motion to dismiss for failure to state a claim [ECF No. 57];

**USA V. BHARTI ET AL.**                                                              **1:20CV43**

OMNIBUS MEMORANDUM OPINION AND ORDER

(4)  **GRANTS** the Bharti Defendants' motion to dismiss for failure to state a claim [ECF No. 59]; and

(5)  **GRANTS** Defendant Feyisitan Adebajo's motion to dismiss for failure to state a claim [ECF No. 91].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

**DATED:** September 29, 2023

_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA